UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

St. James Mechanical, Inc.,

                            Debtor.

----------------------------------------------------------------X
St. James Mechanical, Inc.,

                            Plaintiff,

    -against-

Royal & Sun Alliance,

                            Defendant.
----------------------------------------------------------------X

Case No.: 09-70124-reg

Chapter 11

Adv. Proc. No.: 09-08136-reg

## *Memorandum Decision*

       Before the Court are cross-motions for summary judgment filed by the Plaintiff and the Defendant in this adversary proceeding. The Debtor, St. James Mechanical, Inc. (the "Debtor" or "Plaintiff") commenced this adversary proceeding seeking indemnification from its insurance carrier, Royal & Sun Alliance ("Defendant")[1] for claims arising from a personal injury suit commenced by Joseph Freehill ("Freehill") against the Debtor, a heating and air conditioning contractor, and ITT Sheraton Corporation ("ITT"), owners of the accident site. A judgment was entered finding the Debtor liable to ITT for Freehill's injuries pursuant to the terms of a

---

[1] The defendant named in the complaint is Royal & Sun Alliance. Papers filed by the Defendant state that Arrowood Indemnity Company ("Arrowood") is the proper party-defendant. According to the Defendant, Arrowood was formerly known as Royal Indemnity Company, which is successor in interest to Royal Insurance Company of America. The papers state that Arrowood was improperly sued in the adversary proceeding as Royal & Sun Alliance. The complaint has not been amended to name the proper defendant but neither party has raised this as an issue in the case.

contractual indemnification obligation. The Debtor then submitted a claim for payment to the Defendant under its insurance policy. The Defendant denied coverage for the claim based on the Debtor's failure to satisfy its obligations under the policy resulting in the Debtor failing to give timely notice of the claim at the time of the accident. Alternatively, the Defendant argues the Debtor failed to give timely notice of the commencement of a lawsuit against the Debtor. In the motions before the Court, each party seeks judgment as a matter of law on the issue of whether the Debtor had a good faith belief in non-liability sufficient to excuse the Debtor's failure to give timely notice of the accident to the Defendant. In addition, the Defendant seeks judgment as a matter of law that the Debtor did not give timely notice of the commencement of the lawsuit.

For the reasons stated herein, the Court finds that as a matter of law, based on the undisputed facts, the Debtor cannot be found to have had a reasonable good faith belief that a claim would not be asserted against it as a result of the injuries sustained by Freehill. Therefore as a matter of law the Debtor cannot be excused from satisfying its obligation to provide the Defendant with timely notice as required under the Contract. Summary judgment will enter in favor of the Defendant.

*Background and Facts*

On May 10, 1996, the Debtor entered into a contract (the "Contract") with Sheraton New York Hotel and Tower d/b/a Sheraton Hudson Corporation ("Sheraton Hudson"), to install an air conditioning and exhaust system in the laundry area of the hotel (the "work site"). At all relevant times, ITT was the fee owner of the hotel, and Sheraton Hudson was the entity operating the hotel. The Contract was executed by Sheraton Hudson and the Debtor, by James Sostarich ("Sostarich"), Vice-President of the Debtor. The Contract provided for the Debtor to indemnify

and hold Sheraton Hudson harmless "from and against all claims, losses and damages … caused by, arising out of or resulting from the performance of the Work … and is caused in whole or in part by any negligent act or omission of Contractor, any Subcontractor … any person or organization directly or indirectly employed by any of them to perform or furnish any of the Work … ." (Contract, General Conditions at 28, Def's Ex. B2).  The supplementary conditions of the Contract included similar provisions obligating the Debtor to indemnify and hold Sheraton Hudson harmless.  (Contract, Supplementary Conditions at 3, Def's Ex. B3).  The Contract required the Debtor to obtain liability insurance naming Sheraton Hudson as an additional insured for claims for damages for bodily injury of any person other than the Debtor's employees.  (Contract, General Conditions at 21, Def's Ex. B2).  The Debtor also was "responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work" and to providing "the necessary protection to prevent damage, injury or loss to all persons on the Work site … ."  (Contract, General Conditions at 26, Def's Ex. B2).

Freehill, the injured worker, was employed by Budd Contracting ("Budd") at the time of the accident.  The Debtor argues that Budd was the hotel's "in house" contractor and the hotel requested that any outside contractor use Budd's services.  Testimony by a representative of Budd, Susan Jorgensen ("Jorgensen"), supports the Debtor's characterization of Budd's relationship with the hotel.  According to Jorgensen, Budd was the "preferred contractor" for the hotel and in the event of any emergency, where time did not allow for bids to be solicited for work, the hotel would call Budd to perform the work.  (Jorgensen Depo. at 33, Pl's Ex. D).  Jorgensen testified that she believed that the hotel might have requested to a contractor that Budd be used on a project because of Budd's knowledge of the building.  (Jorgensen Depo. at 37, Pl's Ex. D).

The Debtor admits that it "hired Budd ... to make openings in cement walls so [the Debtor] could pass the duct work through." (Sostarich Written Statement at A 0001, Pl's Ex. B). Moreover, in a statement attached as Exhibit B to the Debtor's motion papers, Sostarich, in a recorded interview conducted by the Defendant, stated: "We hired a company [, Budd,] who worked in the hotel on a regular basis that worked throughout the years for the Sheraton Hotel. They came with a very good reputation. They received a purchase order from us to take the ceiling down and do the demolition. The work was done through Budd Construction. We received all insurance from Budd Construction to work as a subcontractor for St. James Mechanical." (Sostarich Recorded Statement at A 0004, Pl's Ex. B). Later in that same statement, Sostarich restated its relationship with Budd: "Once again, they were a sub-contractor of St. James Mechanical an[d] we had all their insurance information on file." (Sostarich Recorded Statement at A 0005, Pl's Ex. B). It is undisputed there was no contract between Budd and the Debtor. The work Budd performed for the Debtor at the work site was documented through individual purchase orders. (Jorgensen Depo. at 9, Pl's Ex. D).

On the evening of July 25, 1996, Freehill, was performing demolition work for Budd at the work site. (Freehill Depo. at 11, Def's Ex. E). Freehill's task was to remove a "curtain wall" and ceiling tiles near the entrance ramp of the hotel's parking garage so as to permit the Debtor to run duct work for the HVAC system. (Jorgensen Depo. at 12, 13, Pl's Ex. D). Freehill placed a ladder, given to him by the engineering department of Sheraton Hudson, atop a scaffold provided and owned by Budd. (Freehill Depo. at 11, 30, 35, Def's Ex. E). The Debtor did not provide Freehill with instructions as to how the work was to be performed and, according to Jorgensen, the placement of the ladder atop the scaffold was contrary to any instruction given to Freehill by Budd. (Jorgensen Depo. at 35, Pl's Ex. D). While cutting a section of the wall, a

piece swung down and knocked Freehill off the ladder and scaffold. (Jorgensen Depo. at 13, Pl's Ex. D). The police and an ambulance responded to the accident at which time Freehill was placed on a stretcher and taken to the hospital. (Freehill Depo. at 44, 46, 47, Def's Ex. E).

On July 26, 1996, the day after the accident, Sostarich arrived at the work site and saw that the work to be performed by Budd was not completed. (Sostarich Depo. at 26-28, Def's Ex. M). Sostarich spoke with Jorgensen concerning the uncompleted work at which point Jorgensen informed Sostarich that one of Budd's employees fell off a scaffold the night before while attempting to complete the work at the work site. (Sostarich Depo. at 25, Def's Ex. M). Jorgensen informed Sostarich that Freehill had fallen off the scaffold and had been taken to the hospital but the extent of the injuries were not known. (Sostarich Depo. at 25, Def's Ex. M; Jorgensen Depo. at 64, Pl's Ex. D). Several days later Sostarich spoke to Jorgensen, who informed him that Freehill was out of work and on disability. (Sostarich Depo. at 31, 32, Def's Ex. M). Sostarich and Jorgensen spoke several times about matters concerning the work under the Contract at which times Sostarich inquired about Freehill's status. (Sostarich Depo. at 31, 33, Def's Ex. M). Sostarich was not given any information regarding Freehill's condition or the extent of his injuries. (Sostarich Depo. at 31, Def's Ex. M). Neither Sostarich, nor the Debtor, made a request for any accident reports or the identity of the injured employee, nor did they make any written request for information regarding the accident or Freehill's condition. (Sostarich Depo. at 30, 32, 33, Def's Ex. M; Cavanaugh Depo at 38, 45, Def's Ex. N). Sostarich did not inquire, of Budd or Sheraton Hudson, whether the injured employee was going to file claims arising out of the accident. (Sostarich Depo. at 34, Def's Ex. M).

On October 14, 1997, Freehill commenced a personal injury action against ITT resulting from the accident that occurred on July 25, 1996. On August 6, 1998, Freehill filed an amended

complaint adding the Debtor as a defendant. (Complaint, Def's Ex. C). On August 18, 1998, the Debtor was served with the summons and complaint via the Secretary of State. (Affidavits of Service, Def's Ex. D). Forty four days later, September 24, 1998, the Defendant received its first notice of the incident and the lawsuit. (Douglas Affidavit at ¶¶ 5-7, Def's Ex. A).

On September 28, 1998, the Defendant sent a letter to the Debtor stating that it had received notice of the summons and complaint concerning the Freehill litigation and reserved the right to disclaim coverage upon further investigation. (Arrowood September 28, 1998 Letter, Def's Ex. A3). The Defendant's letter stated that the accident giving rise to the referenced claim occurred almost two years prior to the Defendant receiving any notice. The letter cited to Section IV of the insurance policy which states that "You [the insured] must see to it that we [the insurer] are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." (Arrowood September 28, 1998 Letter, Def's Ex. A3). On October 14, 1998, the Defendant disclaimed coverage to the Debtor in connection with Freehill's claim based upon the Debtor's alleged failure to comply with the notice conditions of Section IV of the insurance policy. (Defendant October 14, 1998 Letter, Def's Ex. A4).

On August 12, 2002, the New York Supreme Court – Queens County granted summary judgment in favor of Freehill against ITT on his claims under New York Labor Law §240, and granted summary judgment in favor of ITT dismissing Freehill's New York Labor Law §200 and common-law negligence claims. In addition, the state court granted summary judgment in favor of ITT against the Debtor on its cross claim for indemnification. (Decision at 1, 3, Def's Ex. G).

On April 14, 2005, Zurich American Insurance Company, ITT's insurer, settled Freehill's judgment against ITT for $1 million. (Decision at 3, Def's Ex. H). On September 26, 2008, the state court, based on the August 12, 2002 order granting ITT's summary judgment for

contractual indemnification against the Debtor, granted summary judgment in favor of ITT against the Debtor for the purposes of establishing damages concerning the Debtor's contractual indemnification of ITT in the amount of $1 million, plus interest. (Decision at 4, Def's Ex. H). The Debtor unsuccessfully appealed. The Debtor argued, to no avail, that the judgment was entered against the Debtor in favor of ITT in error based on the argument, among others, that the Debtor's indemnification obligation under the Contract was to Sheraton Hudson, not to ITT. By order of the Appellate Division, Second Department, dated June 8, 2010, the judgment against the Debtor was affirmed.

On October 1, 2002, the Debtor commenced a declaratory judgment action against the Defendant in New York State Supreme Court, Suffolk County (Complaint, Def's Ex. J), seeking defense costs and indemnification under its insurance policy in connection with the Debtor's liability to ITT. Both the Debtor and the Defendant moved for summary judgment. On December 19, 2005, the state court granted the Defendant's motion for summary judgment finding that the Debtor failed to raise a triable issue of fact as to whether the Debtor had a good faith belief in non-liability sufficient to excuse its delay in giving the Defendant notice of the accident. As a result, the Debtor was denied coverage under the insurance policy. (Decision, Def's Ex. S). The Debtor successfully appealed. On October 30, 2007, the Appellate Division, Second Department, reversed the Supreme Court's decision and found that there was a triable issue of fact as to whether the Debtor had a reasonable good faith belief in non-liability sufficient to excuse its failure to provide timely notice to the Defendant. (Decision, Def's Ex. T).

On January 9, 2009, the Debtor filed a voluntary petition for bankruptcy under Chapter 11 with the United States Bankruptcy Court for the Eastern District of New York and

subsequently removed the declaratory judgment action against the Defendant to this Court. The parties conducted discovery and filed cross-motions for summary judgment based on a more complete factual record, including the testimony of Budd's representative, Susan Jorgensen.

The Debtor contends that it had a good faith belief that it would not be liable for Freehill's injuries. Freehill, the Debtor argues, was employed by Budd which was Sheraton Hudson's in-house contractor, not a subcontractor of the Debtor; Budd reported directly to Sheraton Hudson, not the Debtor, on a daily basis; there was never any formal written agreement between the Debtor and Budd; the Debtor did not provide equipment or supervision or direction to Budd as to the performance of its work; neither the scaffold nor the ladder that Freehill was using at the time of the accident was provided to Freehill by the Debtor; when the Debtor's principals arrived at the accident site the following morning, the accident site had been cleaned and there was no visible sign that an accident had occurred; the Debtor was informed that Budd's employee was taken to the hospital but was not given any information as to the extent of his injuries despite requesting such information; the Debtor did not have any knowledge, constructive or otherwise, that the work site was unsafe sufficient to establish a claim under Section 200 of the New York Labor Law; the Debtor was not an owner, general contractor or statutory agent of the owner of the accident site and as such had no expectation of liability under Section 240 of the New York Labor Law. The Debtor therefore contends that based on these facts it did not believe there was a reasonable likelihood that it could be liable for Freehill's injuries.

In support of its cross-motion for summary judgment, the Defendant characterizes Budd as the Debtor's subcontractor and argues that the Debtor knew of the accident and resulting injuries the day after the accident occurred. These facts alone, the Defendant argues, show that

the Debtor could not have had a reasonable basis to believe that no claim would be asserted against it. Therefore, the Debtor's failure to satisfy its notice obligation to the Defendant is not excused under the contract documents or applicable New York law. Alternatively, even if the Court finds that the Debtor had a good faith belief in non-liability, the Debtor still had an obligation to give timely notice to the Defendant of the filing of the lawsuit. The Defendant argues that it did not received notice of the personal injury lawsuit until 44 days after the Debtor was served with the summons and complaint and this was not timely notice. The Debtor urges the Court not to consider this alternative theory this late in the proceedings because it is the first time that the Defendant has raised this argument.

*Relevant Law*

It is a well-settled principal of law that when an insurance policy requires an insured to provide the insurer with timely notice of a potential claim or lawsuit the notice must be provided to the insurer "within a reasonable time in view of all the facts and circumstances" of the case. *Sayed v. Macari*, 296 A.D.2d 396, 397, 744 N.Y.S.2d 509, 510 (N.Y. App. Div. 2002) (citing *Travelers Indem. Co. v. Worthy*, 281 A.D.2d 411, 411, 721 N.Y.S.2d 400, 402 (N.Y. App. Div. 2001) (citing *Merchs. Mut. Ins. Co. v. Hoffman*, 56 N.Y.2d 799, 437 N.E.2d 1155, 452 N.Y.S.2d 398 (N.Y. 1982))). Failure to satisfy the notice requirement of an insurance policy constitutes valid grounds to deny coverage under the policy as a matter of law, *Safer v. Gov't Employees Ins. Co.,* 254 A.D.2d 344, 345, 678 N.Y.S.2d 677, 678 (N.Y. App. Div. 1998), unless the insured can show that it had a good faith belief in non-liability for an accident.[2] *Sec. Mut. Ins. Co. of*

---

[2] Under the law in effect at the time the subject policy was issued, an insurer did not need to show prejudice before it could deny coverage for untimely notice. *Sec. Mut. Ins. Co. of New*

*New York v. Acker-Fitzsimons Corp.,* 31 N.Y.2d 436, 440-41, 293 N.E.2d 76, 78-79, 340 N.Y.S.2d 902, 905-06 (N.Y. 1972). "At issue is not whether the insured believes he will ultimately be found liable for the injury, but whether he has a reasonable basis for a belief that no claim will be asserted against him." *SSBSS Realty Corp. v. Pub. Serv. Mut. Ins. Co.*, 253 A.D.2d 583, 584, 677 N.Y.S.2d 136, 138 (N.Y. App. Div. 1998).

Summary judgment is appropriate only if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "A fact is material when it might affect the outcome of the suit under governing law. An issue of fact is genuine if the evidence is such that a reasonable jury could have returned a verdict for the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007). In reviewing the record, the court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Id*.

Questions of "good faith" and "reasonableness" are generally questions that are reserved for the trier of fact. *See E.T. Nutrition Inc. v. Central Mut. Ins. Co.,* 201 A.D.2d 451, 452, 607 N.Y.S.2d 392, 393 (N.Y. App. Div. 1994) (good faith belief in non-liability is an issue for the trier of fact); *Winstead v. Uniondale Union Free School Dist.,* 170 A.D.2d 500, 503, 565 N.Y.S.2d 845, 847 (N.Y. App. Div. 1991) (whether a good faith belief in non-liability is reasonable under the circumstances is a matter of fact not law). However, summary judgment

---

*York v. Acker-Fitzsimons Corp.,* 31 N.Y.2d 436, 440, 293 N.E.2d 76, 78, 340 N.Y.S.2d 902, 905 (N.Y. 1972); *Argo Corp. v. Greater New York Mut. Ins. Co.,* 4 N.Y.3d 332, 340, 827 N.E.2d 762, 765, 794 N.Y.S.2d 704, 707 (N.Y. 2005) (insurance company was not required to show prejudice before declining coverage for late notice of the lawsuit). Section 3420 of the New York Insurance Law was subsequently amended to require that an insurer show prejudice before declining coverage for untimely notice. However, that amendment only applies to policies issued or delivered after January 17, 2009, which is not the case here.

may be granted in favor of the insurer if, viewing all evidence in favor of the insured, "the evidence establishes, as a matter of law, that the insured's belief in non-liability was unreasonable or in bad faith." *Ponok Realty Corp. v. United Nat. Specialty Ins. Co.,* 69 A.D.3d 596, 597, 893 N.Y.S.2d 125, 127 (N.Y. App. Div. 2010). *See also Genova v. Regal Marine Indus. Inc.*, 309 A.D.2d 733, 734, 765 N.Y.S.2d 266, 266-67 (N.Y. App. Div. 2003). It is not for the insured to make a legal conclusion that it would not be liable for a claim asserted against it, just to determine whether a claim might be asserted. *See Muhl v. Commercial Union Ins. Co.*, No. 94-CV-0788(RSP/GJD), 1996 WL 571529, at *3 (N.D.N.Y. Sept. 27, 1996) (failure to recognize potential exposure did not provide a reasonable belief in non-liability); *Heydt Contracting Corp. v. American Home Assur. Co.*, 146 A.D.2d 497, 499, 536 N.Y.S.2d 770, 772-73 (N.Y. App. Div. 1989) ("[P]laintiff's assumption that other parties would bear ultimate responsibility for its property loss is insufficient as a matter of law to excuse the more than four month delay in giving notice. The fact that a particular occurrence may not in the end result in a ripened claim does not relieve the insured from advising the carrier of that event[.] . . . Thus, the mere possibility of a claim should have alerted plaintiff to the necessity of promptly informing its insurance carrier of the [incident] and its loss therefrom."); *Power Auth. v. Westinghouse Elec. Corp.*, 117 A.D.2d 336, 340, 502 N.Y.S.2d 420, 422 (N.Y. App. Div. 1986) ("No exception is made for losses which appear insubstantial or which in the insured's estimation may not ultimately ripen into a claim. ... When the insured indefinitely reserves to itself the determination of whether a particular loss falls within the scope of coverage it does so at its own risk."). *Cf. Eastern Baby Stores, Inc., v. Cent. Mut. Ins. Co.*, 337 Fed.Appx. 10, 12-13 (2d Cir. 2009) (insured's belief in non-liability on the basis that it thought the claim would be covered by workers compensation was not reasonable). *But see North Country Ins. Co. v. Jandreau*, 50

A.D.3d 1429, 1430-31, 856 N.Y.S.2d 294, 295-96 (N.Y. App. Div. 2008) (upholding denial of summary judgment and finding that reasonableness should be determined at trial where contractor believed he would not be liable for injury to subcontractor's employee).

In determining the reasonableness of an insured's belief in non-liability, courts commonly look to whether, and to what extent, the insured inquired into the circumstances of the accident and evaluated its potential liability as a result of the accident.  *See Eastern Baby Stores,* 337 Fed.Appx. at 12 (2d Cir. 2009)*; Sec. Mut. Ins. Co. of New York v. Acker-Fitzsimons Corp.,* 31 N.Y.2d 436, 441, 293 N.E.2d 76, 79, 340 N.Y.S.2d 902, 906 (N.Y. 1972); *Philadelphia Indem. Ins. Co. v. Genesee Valley Improvement Corp.,* 41 A.D.3d 44, 46-47, 834 N.Y.S.2d 802, 804 (N.Y. App. Div. 2007).  *See also Woolverton v. Fid. & Cas. Co. of New York,* 190 N.Y. 41, 48, 82 N.E. 745, 747 (N.Y. 1907) (insured has a duty to notify its insurer unless, after becoming appraised of the accident "he exercises reasonable diligence to acquire information" and determines there exists no potential liability).

It has been held that an insured's belief in non-liability was neither objectively nor subjectively reasonable where it had agreed in its work contract to fully indemnify another party for any liabilities incurred on the construction project.  *See First Fin. Ins. Co. v. Jetco Contracting Corp.,* 202 F.Supp.2d 13, 15 (S.D.N.Y. 2001), *vacated on other grounds*, 352 F.3d 653 (2d Cir. 2003).  *See also Muhl v. Commercial Union Ins. Co.*, No. 94-CV-0788(RSP/GJD), 1996 WL 571529, at *3 (N.D.N.Y. Sept. 27, 1996) (based on the construction contract entered into by the insured which required the insured to protect the owner from claims, the circumstances would have suggested to a reasonable person the possibility of a claim).

The facts of *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 202 F.Supp.2d 13 (S.D.N.Y.

2001)[3], are similar to the facts before the Court. In *Jetco*, the insured argued that its failure to give timely notice to its insurance carrier was excusable because it had a good faith and reasonable belief in non-liability. *Id.* at 15. In that case, the insured was a general contractor and the injured party was working for a subcontractor at the time of the accident. At trial, the insured's principal testified that it did not notify its insurance carrier at the time of the accident because the injured party was not an employee of the insured and because the insured's representatives were not on the work site the day of the accident. *Id.* The insured testified that he conducted no investigation of the accident despite his awareness that he contracted to fully indemnify the owner of the project for any liabilities incurred on the project. *Id.* In *Jetco*, the trial court found that the insured's belief in non-liability was not reasonable and that "an insured may not simply assume that there will be no potential liability, but rather must investigate the incident to determine whether potential liability exists." *Id*.

*Analysis*

The Court must determine whether, on the undisputed facts presented, the Debtor's belief that no claim would be asserted against it as a result of Freehill's injuries, was reasonable so that as a matter of law the Debtors admitted failure to provide timely notice under the Contract can be excused. The Debtor's ultimate liability to Freehill and/or ITT, for indemnification, is the subject of state court proceedings and it is not for this Court to determine whether the Debtor should in fact have been held liable. The Court's decision solely determines whether the Defendant should be required to provide insurance coverage in the event the Debtor is found

---

[3] This decision was subsequently vacated and remanded on other grounds.

liable.  In reaching its decision, the Court must determine whether the Debtor's failure to give the Defendant timely notice of the subject claim was reasonable as a matter of law.

Viewing the facts presented in a light most favorable to the Debtor, the Court finds that as a matter of law the Debtor cannot be found to have had a reasonable belief that no claim would be asserted against it as a result of Freehill's injuries at the work site.  It is undisputed that the Debtor contracted with Sheraton Hudson to install a laundry ventilation system at the Sheraton Hudson hotel.  The Contract between the Debtor and Sheraton Hudson provided that the Debtor was "responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work."  (Contract, General Conditions at 26, Def's Ex. B2).  The documentary evidence shows the Debtor had a contractual obligation to indemnify Sheraton Hudson for claims and losses of any person "directly or indirectly employed" to perform work on the project.  (Contract, General Conditions at 28, Def's Ex. B2)

Although the parties do not agree on the precise nature of the relationship among the Debtor, Budd and Sheraton Hudson, they do agree that Budd performed work on the project for which Budd would issue the Debtor purchaser orders.  (Jorgenson Depo. at 9, Pl's Ex. D). Although a purchase order was not generated for the work being performed at the time of the accident, it is undisputed that at the time of the accident Freehill was removing ceiling tiles at the work site which was done to facilitate the Debtor's work at the project.  The Debtor's attempts to paint a distant relationship between itself and Budd, do not change these undisputed facts.

The Debtor's principal, Sostarich, testified that he knew that one of Budd's employees was injured while performing work at the project (Sostarich Depo. at 25, Def's Ex. M); that the injured employee was taken to the hospital; (Sostarich Depo. at 25, Def's Ex. M; Jorgensen Depo. at 64, Pl's Ex. D); and that he was out of work on disability (Sostarich Depo. at 31, 32,

Def's Ex. M).  Sostarich inquired about Freehill's status, but he was not given any information regarding his condition or the extent of his injuries.  (Sostarich Depo. at 31, 33, Def's Ex. M). The Debtor did not request an accident report or seek the identity of the injured employee (Sostarich Depo. at 30, 32, 33, Def's Ex. M; Cavanaugh Depo at 38, 45, Def's Ex. N).  The Debtor did not inquire, of Budd or Sheraton Hudson, whether the injured employee was going to file legal claims arising out of the accident or whether Budd or Sheraton Hudson had reported the accident to their respective insurance companies.  (Sostarich Depo. at 34-35, Ex. M).

The Debtor's argument that it did not believe that it should or would be found liable under New York Labor Laws or other applicable law, do not, in this Court's view, create a *reasonable* belief that a claim would not be asserted against the Debtor.  The Debtor should have known that as a contractor at a work site there is always a potential claim to be asserted against it as a result of an accident at the work site.  A reasonable person in the Debtor's position would have anticipated the claim, regardless of its merit, and notified its insurance carrier.  The Debtor's own testimony shows that it did not undertake any independent investigation of the accident, the resulting injuries or any potential claim.  Rather, the Debtor's principal made inquiry as to the injuries sustained but when it did not receive satisfactory information in response, it simply assumed no claim would be asserted.  This does not satisfy the Debtor's duty to inquire.

The Debtor also suggests that because it was ultimately found to be liable for Freehill's injuries as a result of an alleged obligation to indemnify ITT, and because it was an error of the state court to hold the Debtor liable to ITT for indemnification, it could have had no expectation of liability to ITT and therefore it had a good faith belief in non-liability.  First, it is not for this Court to review the state court judgment which held the Debtor liable for indemnification.

Absent a successful appeal by the Debtor to the New York Court of Appeals that judgment is a valid and binding judgment of the state court.  Second, it is undisputed that at the time of the accident the Debtor was obligated to indemnify Sheraton Hudson for any claims or losses "resulting from the performance of the work or from failure to guard the same, whether such operations be by himself or by a subcontractor or anyone directly or indirectly employed by either of the[m]".  As such, the Debtor should have known that a claim might be asserted against it directly or indirectly either by Freehill or Sheraton Hudson, if not ITT.  It was not for the Debtor at the time to make a legal conclusion that it would not be liable for a claim asserted against it under the New York Labor Law, under the contract or under common law.  *See* cases cited *supra*.  Rather, the Debtor's obligation was to make a good faith determination whether a claim would be asserted against it, regardless of the Debtor's belief in the merits of that claim, and notify its insurance carrier.

In light of these findings, the Court does not reach the Defendant's alternative basis for relief which is that the Debtor did not give the Defendant timely notice of the filing of the lawsuit.

### *Conclusion*

Based on the undisputed facts presented including the testimony and documentary evidence, the Court finds that the summary judgment should be entered in favor of the Defendant.

The Court will issue an Order and Judgment consistent with this Memorandum Decision, forthwith.

Dated:  Central Islip, NY                                          By: */s/ Robert E. Grossman*
        August 9, 2010                                                     Hon. Robert E. Grossman
                                                                                                      United States Bankruptcy